L&EMUEL KEMPTON *vs.* MELLEN BRAY & another.

One appointed by the patentee of a machine, although for a valuable consideration and by an instrument in terms irrevocable, to be his "sole agent for the manufacture and sale" of such machines in this state, and to retain a commission on the proceeds of sales in compensation for his services, and pay to the patentee the balance after reimbursing to himself the cost of manufacturing and selling, cannot maintain a bill in equity for an injunction on the patentee, or his subsequent assignee of the patent right, against here manufacturing and selling machines under the patent.

BILL IN EQUITY, filed on the 25th of September 1867 by Lemuel Kempton against William Woodbury and Mellen Bray, for an account, an injunction and other relief. The answer, among other defences, set up that the plaintiff had an adequate remedy at law. Hearing upon bill, answers, replication and proofs, before *Wells*, J., who reported the case for the decision of the full court, in substance as follows :

William Woodbury, having obtained letters patent from the United States for " an improved tackle for fore and aft sails," called " Woodbury's patent boom spring traveller," on the 10th of August 1864 executed to Kempton a deed, of which the following is the material part : " I, the said Woodbury, have sold, assigned and conveyed, and do by these presents sell, assign and convey unto the said Kempton, his administrators and assigns, one undivided half part of all right, title and interest in, to and under said letters patent, within and for the states of California and Oregon, and the territory of Washington, to have and to hold to him, the said Kempton, his legal representatives and assigns, for and during the term for which said letters patent are granted, as fully and entirely as I might have held and enjoyed the same if this assignment had not been made. And I hereby constitute and appoint said Kempton to be my sole agent for the manufacture and sale of such tackle in the states and territory above mentioned, and also in the states of Maine, New Hampshire, and Massachusetts except the county of Essex. But nevertheless said manufacture and sale are to be carried on and the proceeds of such sale to be accounted for, in accordance

with an indenture of even date herewith between myself and said Kempton."

By that indenture, in consideration of said assignment and appointment, Kempton agreed to conduct the business of man ufacturing and selling such tackle in a reasonable and business-like way, to keep books of account open to Woodbury's inspec- tion, to advance the sum of three hundred dollars towards start· ing the business, and to render accounts of sales and expenses every three months; and Woodbury agreed that he would " not appoint any other agent for said territory, nor attempt to revoke the appointment of" Kempton, " but such agency shall be, by force of this agreement, (if it is not so already,) irrevocable, and shall continue for and during the term for which said patent is granted;" and Woodbury agreed to repay said sum of three hun- dred dollars in one year with interest, and, in case he should not do so, " to execute a legal and proper assignment to said Kemp- ton of the remaining undivided half of the right, title and inter- est under said patent within and throughout Oregon, California, and Washington Territory, and also the states for which said Kempton is agent." " The said Kempton shall retain ten per cent. of the gross amount of receipts from such business, after deducting the amount paid as interest on capital, as above pro- vided, and the expense of advertising, as his commissions; and from the remainder shall reimburse himself for the cost of man- ufacturing such tackle, and the cost of selling it, other than ad-- vertising. The remainder he shall pay over to said Woodbury,. unless it is received from sales made in California, Oregon, or Washington Territory, in which case he shall retain one half of the remainder for his own use. Either party may make sales within his own territory, to any vessels, regardless of what port they belong to, but neither shall sell such tackle for resale within the district of the other."

Kempton, in pursuance of said assignment and indenture, engaged in the manufacture of said tackle, hired a shop and counting-room, advertised and circulated handbills, and contin- ued to make and sell such tackle ever since.

On the 28th of September 1865 Woodbury assigned to Mel·

len Bray all his right, title and interest in the letters patent, subject to the terms and stipulations of an agreement of the same date by which Bray agreed to pay a consideration of four thousand dollars; both parties agreed to use their best exertions in selling and disposing of said tackle, applying it to vessels, and bringing it into general use; Bray was to receive all the proceeds of sales, and keep accounts open to Woodbury's inspection; and " the net profits arising from the manufacture and sale of said invention and improvement, or of rights under said letters patent, shall, after the deduction of all expenses incurred in such manufacture and sale, be divided equally between the parties to this agreement, share and share alike, and shall be received by them in full compensation for their services."

Mellen Bray took this assignment and entered into this agreement with full knowledge of the agreements between Woodbury and Kempton; and immediately afterwards commenced and has since continued the manufacture of Woodbury's patent spring travellers in Boston, keeping an assortment on hand, showing them to customers, and issuing handbills, which were not, however, proved to have been circulated in the district to which the plaintiff claimed the exclusive right; sold the principal part of the travellers, or sent them to agents, in other districts; but sold eight within the district claimed by the plaintiff, besides eleven to the plaintiff himself.

Woodbury was frequently in Mellen Bray's shop, advising and coöperating in the interests of the business; but did not personally manufacture or sell any travellers within the districts claimed by the plaintiff, nor was he interested in the manufacture or sale by Mellen Bray, otherwise than under and in accordance with the agreement between them. On the 24th of August Woodbury transferred all his interest in that agreement to William Bray, a brother of Mellen; and never afterwards took any part or had any interest in the business. No other agent was appointed for the manufacture and sale of travellers within any of the districts for which the plaintiff claimed the exclusive right

*H. G. Hutchins*, for the plaintiff.

*D. H. Mason & S. Z. Bowman*, for the defendants.

GRAY, J.  The franchise conferred by letters patent under the laws of the United States cannot be divided except as those laws authorize; and by those laws no transfer of less than the whole of the patent right is valid, except an assignment of an undivided share in the whole patent, or a grant of the exclusive right within a specified part of the United States, either by an express assignment of the entire right within such limits, or at least by license to make, use and vend, and to grant to others the right to make, use and vend, the patented article therein, exclusively of the patentee himself as well as of all other persons.  U. S. St. 1836, c. 357, § 11.  *Wilson* v. *Rousseau*, 4 How. 672, 686.  *Gayler* v. *Wilder*, 10 How. 494, 495.  *Howe* v. *Wooldredge*, 12 Allen, 21, 22.

The very instruments executed by Woodbury to the plaintiff make a careful discrimination between an assignment of an interest in the patent right, and an appointment of an agent to manufacture and sell the patented article.  Within the states of California and Oregon, and the territory of Washington, they purport to assign to him and his representatives and assigns an undivided half of the patent right.

But within the states of Maine and New Hampshire, and Massachusetts, (excepting the county of Essex,) they contain no words of assignment of the right, or of agreement to assign, except upon a single contingency — which has not occurred — the patentee's failure to repay at the end of a year the sum advanced by the plaintiff.  Within these limits, they do not authorize the plaintiff to convey to third persons any part of, or license to exercise, the franchise; and do not exclude or restrict the right of the patentee himself to manufacture and use the invention; but are in words and effect no more than an appointment of the plaintiff as the patentee's sole agent; in terms indeed irrevocable, yet giving him only an interest by way of commissions in the proceeds of the sales of the articles manufactured and sold by him in the execution of his agency; vesting in him no title, interest or lien, legal or equitable, in the subject matter of the power, and creating no trust or contract, which equity will specifically enforce in the absence of mistake or fraud, (of

which there is in this case no allegation or proof,) or which is binding upon an assignee of an interest in the patent, either with or without notice of the relations between the patentee and the plaintiff; and amounting to a mere personal contract between them, for breach of which the plaintiff's remedy is by action at law against Woodbury. *Hunt* v. *Rousmaniere*, 2 Mason, 249, 250, and 8 Wheat. 203–206. *Webb* v. *Walker*, 7 Cush. 46. *Fuller* v. *Emerson*, Ib. 203. *Langdon* v. *Langdon*, 4 Gray, 189.

Woodbury not having bound himself by agreement with the plaintiff not to assign an interest in the patent itself, but only not to appoint any other agent within the territory in question; and it not being shown that he has appointed or intends to appoint Bray or any other person such an agent; it is immaterial whether an interest in the patent has or has not been duly assigned to Bray. If it has, Bray is not liable to any one for exercising the privileges of the owner of such an interest. If it has not, any remedy for an infringement by him of the patent must be sought in the courts of the United States. *Dudley* v. *Mayhew*, 3 Comst. 14, and cases cited.

The plaintiff cannot therefore maintain this bill, either against Woodbury, the original patentee, or against Mellen Bray, claiming by assignment from him.

*Bill dismissed, without prejudice.*